IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JEFFREY HAWTHORNE,** | ) | |
| | ) | |
| | ) | **CA No.  05-1635** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **MERCER COUNTY CHILDREN AND** | ) | |
| **YOUTH SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff Jeffrey Hawthorne ("Hawthorne" or "Plaintiff") brought this action against his former employer, Mercer County Children and Youth Services ("CYS" or "Defendant"), for gender discrimination under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") 43 Pa. Stat. § 951 *et seq.* Presently, before this Court is Defendant's motion for summary judgment on all claims (Docket No. 17). After a thorough review of the record, including the entire deposition of the Plaintiff, the Court finds that CYS is entitled to judgment as a matter of law on each of Hawthorne's claims.

### II.  FACTUAL BACKGROUND

Plaintiff Jeffrey Hawthorne, a Caucasian male, applied for a position as a foster care supervisor at Mercer County CYS in the latter months of 2003.  Docket No. 26 at 2.  At his first

interview, Plaintiff met with CYS Assistant Director Karen Landfair and CYS supervisors Devanie Santell, Pam Shollenberger, and Karen Rendulic. *Id.* at 1. Later, in November 2003, he was interviewed by CYS Director Beverly Burrows. *Id.* During Hawthorne's interview with Burrows, she informed him that the supervisory position had been filled.[1] Burrows instead offered Hawthorne a non-supervisory position as a caseworker, which he accepted. *Id.*

As indicated in Hawthorne's hiring letter dated November 30, 2003 (Docket No. 18, Ex. B), Plaintiff was hired as a caseworker, on a probationary basis, starting December 1, 2003. The letter stated that after a probationary period of six months, he would be hired on a permanent basis if his performance during the probationary period was "acceptable." *Id.*

Hawthorne worked in the CYS intake unit from December 2003 to February 2004. Docket No. 26 at 4. In that position, he was supervised by Shollenberger. Docket No. 26 at 3. As part of his duties, Hawthorne was required to complete paperwork and investigate complaints; in general, these investigations were to be completed within a sixty-day time period. *Id.* at 2. Plaintiff believes that while in that position, Shollenberger discriminated against him by giving him simple cases and taking him off more complex cases he thought he could handle. Docket No. 34 at 33, 45.

Hawthorne was transferred from the intake unit to the foster care unit in February 2004. Docket No. 26 at 4. According to the Defendant, Hawthorne was transferred to the foster care unit because Shollenberger believed that he was better suited for a position that required less urgency. *Id.* at 3. Plaintiff has testified that he was given no reason for the transfer (Docket No. 34 at 41); it is his belief that his supervisor transferred him to give him "a feeling of uncertainty" in his position and "to create a hostile environment" for him. *Id.* at 42.

---

[1] Plaintiff later learned that the position had been filled by a female, Nicole Wier. Docket No. 26 at 1.

2

In March 2004, the Plaintiff reported to his union steward, Jennifer Schilken, that he believed Burrows, Landfair, and Santell[2] treated men differently from women. Docket No. 26 at 4. The union steward informed him that he could file a grievance against them at any time. *Id.* at 4. She further told him that whenever someone filed a grievance, the supervisors made life more difficult for the person who challenged them. *Id.* at 4-5. Based on their conversation, Plaintiff decided not to file a grievance at that time (or at any other time during his employment) because he "wanted to be seen as a team player." Docket No. 34 at 59. Plaintiff believes Landfair heard his conversation with Schilken, because as he left Schilken's office, he saw Landfair eavesdropping outside of it. Docket No. 34 at 54.

The following month, April 2004, Plaintiff underwent an informal employee review with his then-supervisor, Nicole Wier. Docket No. 26 at 5. During the review, Plaintiff and Wier reviewed Plaintiff's performance. At that time, the Plaintiff signed a document that highlighted three areas in which he was performing well, and six areas in which he needed to improve. Docket No. 18, Ex. F. The evaluation praised Hawthorne for his communication and grammar skills as well as his willingness to learn. *Id.* The evaluation also indicated that Hawthorne needed to improve his work in other areas, including making sure case notes had detail, following the mandates of law in regard to required contacts between parents and children, and having a basic understanding of the Protective Service Law and Juvenile Act. *Id.* Plaintiff did not voice any disagreement with Wier's assessment of his job performance and signed the document (Docket No. 26 at 6); however, he now believes she did not have a proper basis for

---

[2] The Plaintiff testified in his deposition that he could not identify any action of Santell that created a hostile work environment for him, nor could he identify any discriminatory act she took against him. Docket No. 34 at 114. Thus, the Plaintiff's claims are directed primarily at the actions of Burrows and Landfair.

3

making such an assessment as she had only been his direct supervisor for approximately one month. Docket No. 23 at 10.

Wier issued a formal "personnel warning and disciplinary notice" to Hawthorne on May 17, 2004. Docket No. 18, Ex. G. This warning stemmed from an incident in which the Defendant claims Hawthorne failed to follow the proper procedures and supervisory directives on a specific case. *Id.* Plaintiff denies the Defendant's version of events leading up to the warning, and insists he handled the case properly. Docket No. 34 at 78-84.

Hawthorne underwent a formal performance review on May 27, 2004, in which his overall work performance was graded as "unsatisfactory." Docket No. 18, Ex. I. Plaintiff admits that he signed a box stating "I agree with this rating" despite being told by Wier and Landfair that he could disagree with the rating. Docket No. 34 at 87. Plaintiff claims he signed only to demonstrate that he could be a "team player," and that in reality he did not agree with the evaluation. *Id.* at 85-86. At that time, the Plaintiff's probationary period was extended for an additional six months. Docket No. 26 at 8. The Defendant claims that Plaintiff was allowed to stay in his position for an additional probationary period despite his poor performance because, at the time of the review, he had only been in the foster care unit for three months, and the Defendant wanted additional time to assess his performance since his previous post had been different. Docket No. 18; Ex. E at 74-75.

The Plaintiff was again issued a formal disciplinary notice on November 10, 2004. Docket No. 18, Ex. J. This notice stemmed from an incident in which the Plaintiff did not fill out a referral form according to the agency's procedures, and had to go back and change the form after being reprimanded by his supervisor. *Id.* The Defendant alleges that the formal warning

was given because Plaintiff's failure to properly fill out referral forms was an ongoing problem.
Docket No. 26 at 10-11.  However, Plaintiff denies these allegations and claims all of the
necessary information was included in the form, and that this was the first time the issue had
been brought to his attention.  *Id.*

Plaintiff also underwent his second formal performance review on November 10, 2004.
Once again, Plaintiff received an overall performance rating of "unsatisfactory." Docket No. 18,
Ex. K.  Hawthorne told Burrows and Landfair that he did not agree with the content of the
evaluation.  Docket No. 26 at 14.  Hawthorne signed the report acknowledging he reviewed it
with his supervisors, but did not sign as to whether he agreed or disagreed with the evaluation.
Docket No. 18, Ex. K.   At that time, CYS sought and received permission from the Mercer
County Commissioners and the Civil Service Commission to extend the Plaintiff's probationary
period for an additional six months.  Docket No. 26 at 14.

In January 2005, Plaintiff received a disciplinary notice stemming from an incident in
which the Defendant alleges that the Plaintiff did not properly arrange visits between a mother
and child as per his supervisor's instructions.  Docket No. 18, Ex. L.  The Plaintiff does not deny
that the required visits did not take place; he claims that it was not his fault, however, because the
mother had not called him to arrange a visit and because the mother would not take public
transportation to a visit.  Docket No. 26 at 15.

On April 20, 2005, the Plaintiff was again issued a disciplinary notice in conjunction
with his final performance review, which occurred the same day.  According to the Defendant,
the disciplinary notice was issued, in part, because Hawthorne failed to regularly follow-up with

a young girl who was living in a home that was frequented by a known sexual offender.[3] Docket

No. 18; Ex. M. The final performance review lists several alleged deficiencies in the Plaintiff's

performance. *Id.* The review also provides that the Plaintiff was unwilling to follow supervisory

directives, despite several warnings. *Id.* The final paragraph of the review states that the

Plaintiff was terminated as a probationary employee as of April 21, 2005. *Id.* At the time that

Plaintiff was terminated, Burrows had tendered her resignation and Landfair had made the

decision to take a voluntary demotion to the position of caseworker. Docket No. 26 at 22.

## A. **Procedural History**

Prior to filing the instant complaint, Hawthorne cross-filed charges of gender

discrimination with the Equal Employment Opportunity Commission ("EEOC") and the

Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued a right to sue letter

on August 31, 2005 and the Plaintiff has exhausted his administrative remedies under the PHRA.

In Count I of his complaint, Hawthorne claims Mercer County CYS unlawfully

discriminated against him based upon his sex under Title VII. Count II alleges that Mercer

County CYS discriminated against Hawthorne in violation of the PHRA.

Following discovery, Mercer County CYS filed the pending Motion for Summary

Judgment on January 5, 2007, seeking to have the entire complaint dismissed (Docket No. 17).

CYS argues that Hawthorne's claims for gender discrimination must fail because "[t]here is no

evidence that Mercer County CYS discriminated against plaintiff because he is a man" and

because the Plaintiff cannot offer evidence that the Defendant's legitimate, non-discriminatory

reasons for his termination "were merely a pretext to discriminate against him because he is a

man." Docket No. 19 at 2.

---

[3] In the Joint Concise Statement of Material Facts (Docket No. 26), the Plaintiff does not admit or deny this
allegation. Docket No. 26 at 16.

## B. <u>Jurisdiction and Venue</u>

Jurisdiction in this Court is based on the Plaintiff's claims under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Jurisdiction over the Plaintiff's PHRA claims is

provided by the supplemental jurisdiction statute, 42 U.S.C. § 1367. Venue is appropriate in this

Court because the events giving rise to the claims all occurred within this judicial district. 28

U.S.C. § 1391(b).

## III. LEGAL STANDARD

### A. <u>Standard for Summary Judgment</u>

Summary judgment may only be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the Court must enter summary judgment

against the party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to

non-moving party, and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*,

478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that

the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv.*

*Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is

such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*,

413 F.3d 359, 363 (3d Cir. 2005). While the non-moving party will bear the burden of proof at

trial, the party moving for summary judgment may meet its burden by showing that the

admissible evidence in the record would be insufficient to carry the nonmovant's burden of proof

at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to

the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use

of affidavits, depositions, admissions, or answers to interrogatories showing that there is

a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually

unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891

F.2d 458, 460 (3d Cir. 1989).

### B. Reverse Discrimination Actions under Title VII and the PHRA[4]

A Title VII claim can be proven through one of two ways: (1) direct evidence of

discrimination under a "mixed motives" theory of liability, *Price Waterhouse v. Hopkins*, 490

U.S. 228 (1989), or (2) circumstantial evidence of discrimination under a burden shifting theory

of liability. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In this case, the parties

agree that the proffered evidence is circumstantial.[5]   In *Iadimarco v. Runyon*, the Third Circuit

established a modified burden-shifting analysis for reverse discrimination that is slightly different

from the burden-shifting test established by the Supreme Court in *McDonnell Douglas* for

traditional discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);

*Iadimarco v. Runyon,* 190 F.3d 151, 155 (3d Cir. 1999). Initially, in order to prove a prima facie

case of discrimination, the Plaintiff must establish that CYS treated him less favorably than

others based on his sex. *Iadimarco*, 190 F.3d at 161. Once this is established, the burden shifts

---

[4] Claims under the PHRA are interpreted under the same standard as Title VII claims. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996).

[5] Both parties have set forth their arguments under the *McDonnell Douglas* framework. *See* Docket No. 19 at 7; Docket No. 23 at 3.

to the Defendant to provide a legitimate, non-discriminatory reason for its actions. *Id.* at 157. If the Defendant can demonstrate that its actions toward the Plaintiff were based on non-discriminatory reasons, the burden shifts back to the Plaintiff to demonstrate that these non-discriminatory reasons were pretextual. *Id.* at 166.

## IV. DISCUSSION

In its motion for summary judgment, CYS claims that Hawthorne has failed to establish a prima facie case of reverse gender discrimination because he has provided no evidence that he was treated less favorably than similarly-situated females. Defendant further argues that if this Court finds sufficient evidence to establish a prima facie case of reverse gender discrimination, the Defendant has proved a legitimate, non-discriminatory reason for the Plaintiff's dismissal – his poor performance. Finally, the Defendant argues that the Plaintiff has provided no evidence that its non-discriminatory reasons for the termination were in any way pretextual.

### A. Prima Facie Case of Sex Discrimination

CYS argues that Hawthorne has failed to establish a prima facie case of reverse sex discrimination because he has provided no evidence that similarly situated females were treated more favorably than he was treated. Hawthorne counters that under *McDonnell Douglas*, he is not required to provide direct evidence of discrimination in order to establish a prima facie case of discrimination, and that he has established a prima facie case considering the totality of the circumstances in evidence. The central question here is whether Hawthorne has presented sufficient evidence to allow a reasonable fact finder to conclude that CYS treated Hawthorne less favorably than others based upon his sex. *Iadimarco*, 190 F.3d at 163. This Court finds that he has not.

### *1. Hawthorne's Proffered Evidence of Discrimination*

The Plaintiff points to several incidents and circumstances which he claims are sufficient evidence to establish a prima facie case of reverse discrimination. The Court will evaluate each of these in turn.

### a. Plaintiff not offered supervisor position

First, Plaintiff originally applied for a supervisory position at CYS; however, at his second interview, he was told that the position had already been filled. Docket No. 26 at 1. He later discovered that the position was filled by a female, Nicole Wier. *Id.* At the interview, CYS offered Hawthorne the lower-level position of caseworker, which the Plaintiff accepted. *Id.* However, the Plaintiff has not alleged, nor has he provided any evidence, that he was equally qualified or more qualified than the female who was hired for this position, Nicole Wier. Without some type of evidence that the female who was hired was equally or less qualified than Hawthorne, or other evidence that the women's sex was a determinative factor in her hiring, this is not evidence of reverse discrimination. *Cf. Iadimarco,* 190 F.3d at 164 (employer's hiring of female applicant rather than male applicant was prima facie evidence of discrimination because the record specifically indicated the male applicant had been rated "superior" and the female applicant was not rated at all).

### b. No other males hired during Plaintiff's tenure

Second, Plaintiff points to the fact that the Defendant hired no other male employees during the period of his employment. Docket No. 26 at 25. According to the testimony of Mary Ann Daniels, the current CYS director, the agency has approximately thirty employees.[6] *Id.* In

---

[6] Daniels was not the director of CYS at any time during the Plaintiff's tenure there.

her deposition, she stated that both males and females have applied for caseworker positions, but that the female applicants she hired were "better" than the male applicants. Docket No. 22, Ex. 5 at 35.

Although statistical evidence is more common in disparate impact cases, plaintiffs in disparate treatment cases are not precluded from introducing statistical evidence to support an inference of discrimination. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1217 (3d Cir. 1995). However, as other courts have noted, in individual disparate treatment claims, statistical evidence is "less significant because the ultimate issue is whether the particular plaintiff was the victim of an illegitimately motivated employment decision. Further, while the statistical evidence is admissible and may be helpful, it is ordinarily not dispositive." *Castillo v. Am. Bd. of Surgery*, 221 F. Supp. 2d 564 (E.D. Pa. 2002).

In this case, the scant statistical evidence Plaintiff has provided in regard to the Defendant's hiring practices is not sufficient to establish a prima facie case of discrimination. The Plaintiff has not provided any evidence as to how many employees were hired during the period in which the Plaintiff worked at CYS or how many males applied to those positions. In addition, the Plaintiff neither provides any evidence, nor alleges by way of argument, that any male applicant was equally qualified or better qualified than the females hired. Moreover, there is nothing about the Plaintiff's claim that suggests *the Plaintiff* was treated less favorably based on his sex.[7] *See Blue v. Def. Logistics Agency*, 181 Fed. Appx. 272, 274 (3d Cir. 2006) (citing *Krodel v. Young*, 748 F.2d 701, 710 (D.C. Cir. 1984) ("In order to be useful in establishing a prima facie case, statistics must assist the plaintiff in proving discrimination in [his or her] particular case").

---

[7] This is especially true considering the Plaintiff's proffered evidence in this regard is the testimony of a CYS supervisor who was not employed by the Defendant at the time of the Plaintiff's employment.

### c. Plaintiff's case assignments

Third, Hawthorne claims that when he was assigned to the intake unit, he was given only simple cases. He further alleges that when complex cases were assigned to him, they were eventually taken away from him over his protests and given to other CYS employees. Docket No. 23 at 5. In his brief in opposition to this motion as well as his deposition, the Plaintiff alleged and testified only that his cases were given to "other workers," not specifically to female workers. *Id*; Document 26 at 22. Assuming arguendo that these cases were given only to female employees, the record indicates that the Plaintiff himself admits that because he "was new, if there was a more severe case . . . one of the more experienced workers" would take over before a case was completed. Docket No. 34 at 37-38. Hawthorne makes no claim, nor does the record indicate, that similarly situated female employees were treated any differently from Hawthorne in this regard. Thus, there is no evidence that would suggest the cases were taken away from the Plaintiff because of his sex.[8] Indeed, given Hawthorne's status as a new, probationary employee, it is reasonable that his superiors would assign less complex cases to him. Accordingly, the Plaintiff's claims in this regard are not prima facie evidence of reverse discrimination.

### d. Plaintiff's transfer to the foster care unit

As previously noted, Plaintiff was reassigned from the intake unit to the foster care unit of CYS after three months of employment. Plaintiff alleges that he was never given any reason for the transfer, and that his supervisor never discussed with him problems with his work performance. He cites this transfer and the lack of explanation as evidence of discrimination.

---

[8] Hawthorne's claims regarding his work assignments are qualitatively different from the types of claims that would establish a prima facie case. For example, he has not claimed that his work assignments were more arduous than those of female employees. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 80-81 (3d Cir. 1999). In fact, he has claimed exactly the opposite, that his assignments were less difficult. Furthermore, he has not alleged that these less difficult assignments were something he was later criticized for, or that prevented him from advancement. *See Jackson v. University of Pittsburgh*, 826 F.2d 230, 235 (3d Cir. 1987).

Docket No. 23 at 6.

Once again, Plaintiff does not argue, nor does the record indicate, that female caseworkers were not also transferred to different units within CYS. In fact, the deposition of Jennifer Schilken, a female caseworker, indicates that she too was transferred to a different unit after approximately two months on the job. Docket No. 22, Ex. 2 at 32. Moreover, Hawthorne's transfer was a move to the department he had originally believed he would be working in when he was hired. Docket No. 34 at 33. While the Plaintiff contends that the move was intended to make him feel uncertain (*Id.* at 42), the record indicates that his supervisors, recognizing the transfer would require him to learn a new position, gave him additional time to become more familiar with the job. Docket No. 18, Ex. E at 6. Other than the Plaintiff's own conclusory statements, there is no evidence that his move to the foster care unit was based on his sex. A plaintiff cannot rely on such unsupported assertions to avoid summary judgment. *See Siegel Transfer v. Carrier Express*, 54 F.3d 1125, 1130 (3d Cir. 1995). The circumstances of Hawthorne's transfer are, therefore, not evidence of reverse discrimination.

### e. Plaintiff's complaint to the union steward

Hawthorne met with his union steward, Jennifer Schilken, in March 2004, at which time he told her that he was being treated differently from other employees on the basis of his sex. Docket No. 34 at 53. Plaintiff alleges that one of his supervisors, Karen Landfair, eavesdropped on this conversation. *Id.* at 54. Hawthorne alleges that all of his negative performance reviews and disciplinary notices occurred after Landfair heard his complaints of gender discrimination. *Id.* at 55. Hawthorne believes the disciplinary notices and poor reviews that occurred after his complaint were unjustified, and are, therefore, evidence of discrimination. However, assuming arguendo that the Plaintiff's version of events is correct and Landfair did hear his conversation with Schilken, there is still no evidence that Landfair or other supervisors treated Hawthorne

differently than any other person who complained about management. Rather, the evidence

indicates that anyone, male or female, who complained to the union steward about the way in

which they were treated by CYS was subsequently treated poorly. Specifically, Schilken stated

in her deposition that any employee who "challenged" Burrows or Landfair or "stood up for

themselves" was targeted by them after having done so. Docket No. 22; Ex. 2 at 30-31. Again,

in order to establish a prima facie case, Hawthorne must demonstrate that CYS treated him less

favorably than others based upon his sex. *Iadimarco*, 190 F.3d at 161. Given that both male and

female employees were treated poorly in this regard, it is not evidence of reverse gender

discrimination.

### f. Female employees treated differently for similar conduct

Plaintiff alleges that his negative performance reviews were motivated by discriminatory

animus rather than his poor performance.[9] In his amended complaint, Plaintiff specifically states

as evidence of this allegation that CYS employees Sara Hurl, Janet Nichols, and Debbie

Jazwinski performed the same actions for which the Plaintiff was criticized and ultimately fired.

Docket No. 11 at 16. However, in the parties' combined joint statement of material facts

(Docket No. 26), the Plaintiff admits that he can point to no facts related to how Jazwinski was

treated differently.[10] Docket 26 at 21-22. In addition, there is no indication in the record,

including the Plaintiff's deposition, that Sara Hurl, Janet Nichols, or any other specific female

employee of CYS was treated differently than the Plaintiff. The Plaintiff's only evidence

indicating that Hurl and Nichols were treated differently is his own, self-serving testimony that

"their environment wasn't the same" because both women were "given preference" and both

[9] As discussed later in the Pretext section of this opinion, there is ample evidence in the record indicating the Plaintiff's negative performance reviews were motivated by his poor performance rather than discriminatory animus.

[10] In the same statement, Plaintiff further admits that he cannot point to any facts of how fellow female CYS employees Whitney Clapper and Mary Diaz were treated differently. Docket 26 at 21-22.

women "were given more leeway in completing their assignments and their duties."  Docket No.
34 at 142.  However, nowhere in the record does the Plaintiff point to any specific facts or
incidents that support these allegations.  Moreover, Plaintiff admits that he is not familiar with
the types of cases either woman handled, does not know the details of their performance, and is
not familiar with their evaluations.  Docket No. 34 at 142-43.  Once again, Hawthorne's
allegations in this regard are conclusory and not supported by specific examples, thereby failing
to create a genuine issue of material fact on the issue of prima facie discrimination. *See Lin v.
Rohm & Haas Co.*, 293 F. Supp. 2d 505, 518-19 (E.D. Pa. 2003) (a plaintiff's own belief that
members of the opposite sex are treated differently, standing on its own, is a conclusory
statement, insufficient to establish discriminatory intent).

### g. Plaintiff prevented from taking comp time or overtime

The Plaintiff also claims that while female employees were allowed to take comp time or
were paid overtime, he was not permitted to do so.  However, nowhere in the record does the
Plaintiff point to any specific facts, examples, or other evidence which would support this
allegation.[11]  Again, a Plaintiff cannot rely on unsupported, conclusory statements to withstand
summary judgment; he must counter the moving party with "specific facts which demonstrate
that there exists a genuine issue for trial." *Siegel Transfer v. Carrier Express*, 54 F.3d 1125,
1130 (3d Cir. 1995); *see also Dicroce v. Norton*, 218 Fed. Appx. 171, 174 (3d Cir. 2007).
Plaintiff's allegations in regard to his schedule fail to establish a prima facie case of
discrimination.

---

[11] The Plaintiff's brief in opposition to this motion incorrectly characterizes Schilken's deposition as stating that she
had personal knowledge that the Plaintiff's supervisors did not allow him to take comp time or paid overtime.
Docket No. 23 at 7.  However, Schilken's testimony states that Hawthorne complained to her about this situation, not
that she had personal knowledge that Hawthorne's supervisors engaged in such a practice. Docket No. 22, Ex. 2 at
27.  Furthermore, nowhere in her testimony does she say Hawthorne complained to her that females were treated
differently in this regard.  Hawthorne makes no claims about being denied comp time or paid overtime in his own
deposition. *See* Docket No. 34.

### h. Extension of Plaintiff's probationary period

Next, Hawthorne argues that because Landfair had not extended the probationary period of any other employee during her tenure, and because he knows of no other person who had their probationary period extended while he was employed by the Defendant, the extension of his probationary period is further evidence of Defendant's discrimination against him. Again, the standard here is whether Hawthorne was treated less favorably than similarly situated female employees. *See Garcia v. Matthews*, 66 Fed. Appx. 339, 343 (3d Cir. 2003). However, he has not alleged, nor has he produced any evidence, that female probationary employees with similar performance problems have ever been granted permanent employment by the defendant. Hawthorne cannot rely solely on his own speculation that his probation was extended because he was a male in order to avoid summary judgment. *See Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) ("Speculation and conclusory allegations" do not satisfy the non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor.").

### i. Testimony of Nicole Wier

The only testimony (excluding his own) relied upon by the Plaintiff to support his claims is the testimony of Nicole Wier. Wier testified that during a state investigation of CYS, she told two independent state auditors that she believed Hawthorne was treated differently than other employees. Docket No. 18, Ex. H at 13. However, Wier never stated that Hawthorne was treated differently on the basis of his sex, and there is nothing in her remark that indicates discriminatory gender animus. In her deposition, she stated that she cannot even remember why she made such a remark. Docket No. 18; Ex. H at 14. Moreover, at the time she made the remark, she had been demoted to the position of caseworker, and did not play a role in the decision to terminate Hawthorne. The Third Circuit has held that "[s]tray remarks by

16

non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . ." *Fletcher v. Lucent Techs. Inc.*, 207 Fed. Appx. 135, 138 (3d Cir. 2006) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)). Furthermore, cases in which courts have found "stray remarks" establish discriminatory animus are qualitatively different from this case in that the remark in question in those cases is typically disparaging to the plaintiff's protected trait. *See, e.g., Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996) (plaintiff with seizure disorder referred to by his supervisor as "spasm head"); *Waldron v. SL Indus.*, 56 F.3d 491, 502 (3d Cir. 1995) (plaintiff in age discrimination case told to lose weight so that he would look younger). Accordingly, Nicole Wier's one statement, which did not contain any reference to gender, is not evidence of discrimination.

### j. Supervisors' general hostility toward men

Finally, Plaintiff claims that Landfair and Burrows were hostile toward him and toward males in general. He further claims that Landfair and Burrows wanted to create an "all-female workforce" at the Mercer County CYS before Burrows left and Landfair was demoted to caseworker. Docket No. 34 at 69. Again, the only basis for this claim is the Plaintiff's own speculative testimony, which is insufficient to overcome a motion for summary judgment. *See Shelton v. University of Med. & Dentistry*, 223 F.3d 220, 227 (3d Cir. 2000); *see also Solomon v. Soc'y of Auto. Eng'rs*, 41 Fed. Appx. 585, 586 (3d Cir. 2002). Hawthorne's claims in this regard are especially questionable given that fact that it was Landfair and Burrows who were responsible for hiring Hawthorne. *See Solomon*, 41 Fed. Appx. at 586. Moreover, the evidence in this case indicates that it was not only the Plaintiff who had problems with Landfair and Burrows, but that female caseworkers Schilken and Wier had problems with them as well. Docket No. 22, Ex. 2 at 30; Docket No. 18, Ex. H at 21.

In sum, there is nothing in the Plaintiff's claims, besides his own speculation and

unsupported conclusions, that would indicate he was treated less favorably than other employees based on his sex. As other courts have noted, "the plaintiff must ultimately prove by a preponderance of the evidence that a prima facie case of discrimination exists. Demonstrating only a mere possibility of discrimination will not suffice." *Bailey v. United Airlines*, 2002 U.S. Dist. LEXIS 11636 (E.D. Pa. 2002), *citing Bullock v. Children's Hosp.*, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999). In this case, Hawthorne has demonstrated, at best, the "mere possibility" of discrimination; however, he has failed to establish a prima facie case of reverse gender discrimination.

### B. Legitimate, Non-Discriminatory Reasons for Termination

Even if the Plaintiff had established a prima facie case of gender discrimination, the Defendant has satisfied its burden and established legitimate, non-discriminatory reasons for its actions. *Iadimarco*, 190 F.3d 151 at 157 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802). CYS's burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142 (2000). It does not involve an assessment of credibility. *Id.* In this case the Defendant has produced several written disciplinary notices and performance reviews detailing the Plaintiff's alleged poor work performance. Furthermore, the testimony of Landfair and Shollenberger provides further evidence of legitimate, non-discriminatory reasons for the Plaintiff's dismissal, as they detail specific incidents in which the Plaintiff failed to follow the instructions of his supervisors as well as other performance problems.[12] *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995). As such, the Defendant has met its burden by providing a legitimate, non-discriminatory basis for Hawthorne's termination.

---

[12] In his response to this motion, the Plaintiff does not challenge that the Defendant has satisfied its burden in this regard.

## C. Pretext

As the Defendant has established legitimate, non-discriminatory reasons for Hawthorne's termination, Hawthorne must show that these reasons were pretextual in order to survive the Defendant's motion for summary judgment. In *Fuentes*, the Third Circuit held that a plaintiff can establish pretext by demonstrating that the proffered reasons for its adverse employment action were "either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). A plaintiff may show pretext by "pointing to some evidence, direct or circumstantial, from which a fact finder could reasonably either 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Iadimarco*, 190 F.3d at 166 (quoting *Fuentes*, 32 F.3d at 764). Under the first prong, Hawthorne must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for nondiscriminatory reasons.'" *Fuentes*, 32 F.3d at 765 (quoting *Ezold*, 983 F.2d at 527). Under the second prong, a male plaintiff can establish that his sex was a motivating or determinative factor in his termination by demonstrating past discriminatory treatment, more favorable treatment of similarly situated females, or discrimination against other males. *See Fuentes,* 32 F.3d at 765.

In his brief in opposition to the instant motion, Hawthorne argues that pretext can be found under the first prong of the *Fuentes* test, but does not make an argument as to the second

prong of the test.[13]  Docket No. 23 at 9.  Accordingly, the Court will focus on whether the

Plaintiff has met his burden of demonstrating that a reasonable factfinder would disbelieve

CYS's articulated reasons for Hawthorne's termination.

Plaintiff urges the Court to find pretext under the first prong of *Fuentes* because, "the

record of Plaintiff's performance deficiencies refers to a number of events that did not, in fact

occur, refers to ongoing problems that were never raised outside of the document that identified

that alleged problem, or involved situations in which the individual who issued the disciplinary

notice had previously concurred in a certain course of action."  Docket No. 23 at 13.  This is not,

in fact, what the record shows, and the Plaintiff's claims are insufficient to create a genuine issue

of material fact under the first prong of the *Fuentes* test.

In support of his argument, the Plaintiff takes issue with specific incidents in which the

Plaintiff's performance was criticized.  I will address each of the Defendant's arguments in turn.

First, Plaintiff claims there is a genuine issue of material fact as to pretext because his

evaluations and disciplinary notices refer to ongoing problems that were never raised outside of

the document that identified that alleged problem.  However, a review of the record indicates

otherwise.  For example, Plaintiff's very first review (Docket No. 18; Ex. F) indicates that his

then-supervisor, Nicole Wier, felt he needed improvement in: "time management;" ensuring that

"casenotes have detail;" having a "basic understanding of Protective Service Law and the

---

[13] Nor does the record support a finding of pretext under the second prong of the *Fuentes* test.  The Plaintiff has not provided sufficient evidence that an invidious discriminatory reason was more likely than not a motivating or determinative cause of his termination.  *Fuentes*, 32 F.3d at 764.  A plaintiff can show that his sex was a motivating or determinative factor in his termination by demonstrating past discriminatory treatment, more favorable treatment of other, similarly situated females, or discrimination against other males.  *See Id.* at 765.  As noted above, the record is devoid of any admissible evidence that Hawthorne was treated differently than similarly situated females at CYS. In fact, the record indicates that female caseworkers had problems with CYS management as well.  Similarly, the only "evidence" that other males are or were discriminated against by the Defendant are the Plaintiff's unsupported hearsay statements, which are not considered to counter motion for summary judgment. *See Shelton v. University of Med. & Dentistry*, 223 F.3d 220, 226 n. 7 (3d Cir. 2000).

Juvenile Act;" and following the "directives of supervisor and mandates of law (i.e., - Required contacts rather than make excuses)."[14] *Id.* These types of issues come up repeatedly in Hawthorne's subsequent performance reviews and evaluations. Docket No. 18; Exs. G, I, J, K, L, M, N. For example, after being warned about the issue of "required contacts" in his first review, Plaintiff later received a formal disciplinary notice for an incident in which he did not set up a meeting between a mother and child as part of their "required contacts." Docket No. 18; Ex. L. Accordingly, there is no reason that Hawthorne should not have been aware that the Defendant had a variety of concerns about his performance. Moreover, Plaintiff himself admits that "one or two" of the issues raised in the performance evaluation given to him just prior to his termination had previously been brought to his attention. Docket No. 34 at 120. As such, the Plaintiff's claims that criticisms of his performance in disciplinary actions and reviews were not previously brought to his attention are clearly contradicted by the record.[15] Consequently, his allegations concerning his performance reviews are insufficient to establish a genuine issue of material fact as to pretext.

Next, the Plaintiff claims that he has demonstrated evidence of pretext because one of his disciplinary notices "involved situations in which the individual who issued the disciplinary notice had previously concurred in a certain course of action." Docket No. 23 at 13. The incident to which the Plaintiff is presumably referring is described in the May 17, 2004 disciplinary notice. Docket No. 18; Ex. G. In his deposition, the Plaintiff stated that his then-

---

[14] To the extent that the Plaintiff argues that Wier did not have a sufficient basis to present such a review because she had only been his supervisor for approximately one month, this Court finds such an argument unavailing. It is not appropriate for this Court to sit in judgment of an employer's evaluation methods where there is no evidence that the methods used are discriminatory in nature. *See Marione v. Metro. Life Ins. Co.*, 188 Fed. Appx. 141 (3d Cir. 2006).

[15] This Court further notes that an employer, "is under no obligation to warn [an employee] of complaints regarding his performance and, if anything, the effect of such evidence is equivocal, perhaps indicating that plaintiff was receiving the benefit of the doubt." *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988) (quoting *Pierce v. New Process Co.*, 580 F. Supp. 1543 (W.D. Pa. 1984)).

supervisor, Nicole Wier "signed-off" on a case and later asked him to get an update on the case prior to the trial. Docket No. 34 at 80-81. Plaintiff admits he was unable to get the update Wier requested in the time she allotted him for the task. Docket No. 34 at 84. Hawthorne's testimony indicates that he and Wier disagreed as to whether he had handled the case properly. Docket No. 34 at 78-84. The record also indicates that Wier herself believes she was not very good at being a supervisor, and that she was eventually demoted from supervisor to caseworker during the time Hawthorne was employed at CYS. Docket No. 18; Ex. H at 30. As the Court noted in *Fuentes*, "to discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. *See also Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Plaintiff's version of events, at most, indicates poor direction and communication on the part of his supervisors; it does not provide evidence of pretext.

In further support of his pretext argument, the Plaintiff claims that he was disciplined for events that did not occur. Docket No. 23 at 13. However, the Plaintiff's testimony belies this argument. It is not that the events for which he was disciplined did not occur, as the Plaintiff's brief contends; rather, what the record indicates is that the Plaintiff does not agree with his supervisors' assessment of how he handled his work. The fact that Hawthorne disagrees with the Defendant's evaluation of his performance does not show pretext. *See Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext."), *overruled on other grounds by Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). While the Plaintiff may disagree with his supervisors' judgments as to whether the incidents in question were properly handled, he has not demonstrated a triable issue of fact on the issue of pretext.

Although the Plaintiff claims that he has presented evidence that indicates many of the criticisms in his reviews are implausible, the Plaintiff's own testimony indicates otherwise. For example, the Defendant claims that Hawthorne was given a disciplinary warning in November 2004 for failing to complete the information listed on a referral form. In his deposition, the Plaintiff does not claim that he filled the form out completely; rather, he states that because the information existed elsewhere in the file, he "got the information that [he and CYS] needed." Docket No. 34 at 101. He admits that he failed to complete certain information on the form, and had to go back and fill it in at Shollenberger's request. *Id.* at 101-02. What is clear from the record is that Hawthorne did not agree with his supervisor's determination that the information needed to be filled in when it existed elsewhere in a case file. However, as previously noted, it does not matter whether Shollenberger's determination was "wise, shrewd, prudent or competent," *Fuentes*, 32 F.3d at 765; rather the central question is whether she acted with discriminatory animus.

In essence, the record indicates that Hawthorne disagreed with the Defendant's assessment of his performance, and had problems with the management style of his supervisors. This does not raise genuine triable issues as to pretext. Again, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Fuentes*, 32 F.3d at 765. *See also Keller*, 130 F.3d at 1109 ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination."); *Logue v. International Rehabilitation Associates, Inc.*, 837 F.2d 150, 155 n. 5 (3d Cir. 1988) ("[O]ur task is not to assess the overall fairness of . . . [the] employer's actions."). Absent any evidence other than the Plaintiff's disagreement with his supervisors' assessments, the Plaintiff has failed to

establish a genuine issue of material fact on the question of pretext.

Plaintiff's claims also fail under the first prong of the *Fuentes* test because he has failed to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in CYS's proffered reasons for his termination such that a reasonable factfinder could infer that CYS acted with discriminatory animus. *Fuentes*, 32 F.3d at 765. This case is distinguishable from others in which pretext has been shown where negative performance reviews are in question. *See, e.g., Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005) (first negative performance review occurred after working at the same employer for fifteen years); *Lawrence v. National Westminster Bank*, 98 F.3d 61, 66 (3d Cir. 1996) (first negative performance review given after eights years of satisfactory reviews). In those cases, the plaintiffs were able to establish genuine issues of triable fact on the issue of pretext because the plaintiffs had satisfactory job performance ratings for a significant period of time prior to the negative review. In contrast, Hawthorne, a probationary employee, had consistently negative reviews starting with his first review in April 2004; at no time did he receive a performance review above the level of unsatisfactory. The criticisms of Hawthorne's performance, documented in his disciplinary warnings and evaluations, are clear and unambiguous. The Plaintiff's claims, at most, indicate that the Defendant had a less than stellar management team in place while the Plaintiff was employed there. However, there is nothing in the record that would lead this Court to believe that the Defendant's actions were based on a discriminatory motive.

### D. PHRA Claims

As previously noted, claims under the PHRA are interpreted under the same standard as Title VII claims. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996). As the Plaintiff has

24

failed to provide sufficient evidence to survive the Defendant's motion for summary judgment on his Title VII claims, he similarly fails on his PHRA claims.

## V. CONCLUSION

The Plaintiff has failed to establish a prima facie case of reverse discrimination; furthermore, he is not able to demonstrate that the Defendant's proffered non-discriminatory, legitimate reasons for his firing were pretextual. For the foregoing reasons, the Court hereby **GRANTS** the Defendant's motion for summary judgment (Docket No. 17). An appropriate order follows.

Nora Barry Fischer
United States District Judge

Dated: August 6, 2007

cc/ecf: All counsel of record